[No. 1792.]

### Jasper Rhodes *v.* The State.

1. Murder — Charge of the Court.— If the evidence in a murder case tends in no degree to establish a grade of homicide lower than murder in the first degree, the trial court properly refuses to charge upon inferior grades.
2. Same — Fact Case.— See the statement of the case for evidence *held* sufficient to support a capital conviction for murder.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Gustave Cook.

The indictment in this case charged the appellant and one Sam Wilson, jointly, with the murder of Mary Rhodes, the wife of the appellant, in Galveston county, Texas, on the 21st day of October,

1884.   A severance was had, and Wilson was first placed on trial, and found not guilty.  The appellant was then placed upon trial, found guilty of murder in the first degree, and was awarded the death penalty.

Felix Allfire was the first witness for the State.  He testified that he knew the defendant by sight, and he knew one Sam Wilson when he saw him.  Witness had heard of the murder of Mary Rhodes, the deceased.  On the evening of the 20th day of August, which was the day before the homicide, the witness saw the defendant and Sam Wilson together, on Ninth street, between avenues H and I, in the city of Galveston.  The witness distinctly heard the defendant, who was under the influence of liquor at the time, say to Wilson:  "I will have her heart's blood, to-night or to-morrow night."  Wilson then said to the defendant:  "You had better not be making such threats; there is a policeman living near, and he will take you in."  Witness saw the defendant and Sam Wilson together again, on the next day.

Cross-examined, the witness testified that the defendant did not say whose heart's blood he was going to have.  Wilson was sober, but the defendant appeared drunk.

Mrs. Tiernan was the next witness for the State.  She testified that she knew Mary Rhodes, the deceased, in her life-time, and had her in her employ at the time of her death.  Jasper Rhodes, the defendant, who was Mary Rhodes's husband, killed the latter, on the witness's premises in the city of Galveston, Texas, on the night of October 21, 1884, between 7 and 8 o'clock.  He killed her by first shooting her through the head with a pistol, and then cutting her throat.  A short time before the killing, Mary Harrison, the sister of the deceased, came into the witness's room, and told witness that the defendant was down stairs and was going to kill Mary Rhodes.  Witness took her pistol, went down the back stairway into the back yard, and reached the back yard just as the pistol was discharged by the defendant.  Defendant did not fire until the witness spoke.  Witness heard Mary Rhodes say:  "You had better leave here; you know Mrs. Tiernan don't want you here."  Witness spoke then and said:  "Yes, you had better leave."  At that instant the fatal shot was fired.  Mary Harrison, the deceased's sister, followed the witness from the room to the yard.  Witness did not see Sam Wilson, but she distinctly saw the defendant shoot the deceased.  When the deceased fell, the witness saw the defendant drag her body a short distance and then cut her throat.  The defendant and the deceased were man and wife, but had been living

apart for about a month. The deceased had been previously in the employ of the witness, but left on account of her husband, the defendant. When she returned, she told the witness that the defendant had gone up the country because he had stabbed a man, and would not return; and that, in no event, having been impudent to the witness, would he venture on the witness's place. When witness asked the defendant on one occasion why he was taking his wife away, he retorted that his reason was no part of the witness's business. This speech was the impudence referred to. The night of the killing was very dark.

Mary Harrison was the next witness for the State. She testified that she and the deceased were sisters, and that she was present on Mrs. Tiernan's premises in Galveston when the deceased was killed. Sam Wilson came to Mrs. Tiernan's gallery, where the deceased was scrubbing at the time, and said: "Sis, I have come again." Deceased then went out to meet the defendant, and the witness heard her say to the defendant: "You have drawn a pistol." Witness immediately ran up stairs and told Mrs. Tiernan, who came down stairs with witness. Witness was behind Mrs. Tiernan as that lady passed into the yard. She heard the report of the pistol, but, as it was very dark, could not see by whom it was fired. When Sam Wilson first spoke to the deceased, the deceased told him that she was scrubbing, and did not have time to go into the yard. The defendant had been away from Galveston for about one month. The deceased left with him, but returned alone some days afterwards. The defendant and deceased had had no previous quarrel that the witness was aware of.

Doctor Goldman testified that he was called to Mrs. Tiernan's house, in Galveston, Texas, to examine the dead body of Mary Rhodes. He found that her head, just above the right ear, had been penetrated by a pistol ball. He also found a gash across her throat which cut the jugular vein. The wound in the head was necessarily fatal. The gash across the throat was not necessarily fatal if attended to in time. The dead woman's brains were oozing out of the pistol shot wound in the head. The State closed.

Annie Terry was the first witness for the defendant. She testified that, during the absence of the defendant from Galveston, she knew of the deceased going to church and to a supper with one Malty Brown, a barber. On one occasion, during the defendant's said absence, the deceased told the witness that she, deceased, went to Malty Brown's barber shop and got money from him to go to the

theater, and that, after the theater was over, Malty Brown took her home. Defendant was about twenty-one years old.

Frank Lewis testified, for the defense, that he saw the deceased and Malty Brown together at a supper on one occasion. He saw the deceased have Malty Brown's hat, playing with it on her lap. Malty Brown took deceased home from the supper on that night.

Sam Wilson was the next witness for the defense. He testified that he was with the defendant on the day before the death of the deceased, and at the time testified to by the witness Allfire. The defendant made no such threats as were testified to by Allfire, then or at any other time, in the hearing of the witness. He, defendant, was very drunk on that occasion, whooping and yelling very noisily. Witness told him if he persisted in making that noise he would be arrested. Witness went with defendant to Mrs. Tiernan's house on the next evening to see the deceased. Witness called the deceased out to see the defendant. When they (deceased and defendant) met, they shook hands and kissed each other. Witness left immediately and did not see the killing. Defendant and deceased were on friendly terms so far as witness knew.

Captain C. H. Leonard testified, for the defense, that he had known the defendant for seventeen years, and had always known him as an industrious, hard-working boy. The witness had never known him to be in trouble before.

Malty Brown, for the State in rebuttal, testified that he had never been intimate with the deceased; that had he been so, he would so state to the jury. When he escorted the deceased home from the supper, he did not know that she was a married woman.

The failure of the court to charge upon the law of murder in the second degree, and the insufficiency of the evidence to support a conviction for murder in the first degree, were the grounds assigned for new trial.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. After a careful examination and consideration of the record in this case, we find no error in the proceedings and conviction. A clear case of murder in the first degree is established by the evidence,— a deliberate, cruel, fiendish murder, perpetrated by the defendant upon his wife, by first shooting her with a pistol in the head, and then cutting her throat with a knife. There was

no evidence in the case presenting the issue of murder in the second degree, and the court very properly declined to submit to the jury any other issue than that of murder in the first degree.

The judgment is affirmed.

*Affirmed.*

[Opinion delivered February 18, 1885.]